**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ODELL COLEMAN and REBECCA** | : | |
| **COLEMAN, H/W,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 07-2186** |
| | : | |
| **AMERICA'S WHOLESALE LENDER,** | : | |
| **BANK OF NEW YORK, TRUSTEE.** | : | |
| **LNAD HOLDING, LLC,** | : | |
| **COUNTRYWIDE HOME LOANS, INC.,** | : | |
| **JOHN D. GREEN, Sheriff of Philadelphia** | : | |
| **County** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Tucker, J.**                                                                                      **March ___, 2009**

## I.      INTRODUCTION

Plaintiffs, Odell and Rebecca Coleman, were unsuccessful litigants in two state court

actions involving foreclosure and ejection from their home, each commenced in the Philadelphia

Court of Common Pleas.[1]  Plaintiffs allege that Defendants deprived them of their due process

rights in violation of 42 U.S.C. § 1983.[2]  Presently before the Court is Defendants' unopposed[3]

---

[1]   Bank of New York v. Coleman, No. 1902, May term 2001 (the "Foreclosure Action");  Bank of New York v. Coleman, No. 1478, October Term 2005 (the "Ejectment Action").

[2]   The Court previously dismissed, without prejudice, Count II of Plaintiffs' Complaint in a September 12, 2007 Order granting and denying in part Defendants' Motion to Dismiss (Doc. 13). Because Plaintiffs did not file an amended complaint by the Court's October 12, 2007 deadline, there remains no reason to further address Count II.

[3]   Defendant submitted it's Motion for Summary Judgment (Doc. 33) electronically on January 9, 2009.  On February 4, 2009, Plaintiff requested from the Court a five (5) day extension of time, until February 9, 2009, in which to file it's Reply to Defendants' Motion (Doc. 33).  By February 9, 2009,

Motion for Summary Judgment (Doc. 33).  For the reasons set forth below, the Court will grant

Defendants' Motion.


**II.**     **FACTUAL AND PROCEDURAL BACKGROUND**

On March 22, 1999, Odell Coleman obtained a loan from America's Wholesale Lender,[4]

which was secured by a mortgage on his home located in Philadelphia, Pennsylvania (the

"Property").  Odell Coleman has been in default on this mortgage since November 1, 2000.

Thus, Defendant Bank of New York, as Trustee, commenced the Foreclosure Action on May 18,

2001, and a default judgment was entered against Odell Coleman on July 12, 2001.

Subsequently, on December 8, 2003, Odell Coleman deeded the Property to Rebecca Coleman.

Rebecca Coleman is the estranged wife of Odell Coleman.  The two have maintained separate

residences with Ms. Coleman residing at the Property, and Mr. Coleman residing in Gloucester

City, New Jersey.

After the Property was deeded, it was scheduled for a Sheriff's sale on February 3, 2004.

Prior to the Sheriff's sale, however, on January 30, 2004, Rebecca Coleman filed a bankruptcy

petition with the Court of Common Pleas that was dismissed on September 2, 2004.  Rebecca

Coleman filed a subsequent bankruptcy petition that was again dismissed on April 5, 2005.

Following this second dismissal, on June 21, 2005, Bank of New York filed a motion for

alternative service, which was granted on June 24, 2005.  The motion allowed for alternative

---

Plaintiff had filed no Reply to Defendants' Motion.  On February 10, 2009, when the Court called
Plaintiff's counsel to inquire as to why a Reply had not been filed on or by February 9, 2009, Plaintiff's
counsel indicated that he had not had time to do so and did not require a further extension, because he
had no intention of filing any response to Defendants' Motion.

[4] A licensed name for Countrywide Financial Corporation.

service upon Odell and Rebecca Coleman at the Property via certified mail, regular mail and by posting of the premises. Thus, on July 1, 2005, Bank of New York served the Coleman's with Notice of the Sheriff's Sale by regular mail and certified mail, and, on July 6, 2005, by posting notice on the Property. Despite service, however, Rebecca Coleman was not actually named as a party to the Ejectment Action filed in October of 2005, and there was no return of service from Ms. Colemen indicating that she had indeed been served. Nonetheless, on September 27, 2005, the Court of Common Pleas granted Bank of New York's motion to reassess damages. This motion allowed the original payoff balance of $162,267.60, as of the date of the Sheriff's sale, to be increased to $258,293.62 two weeks following the Sheriff's sale.

Then, on January 6, 2006, a motion to return the writ of execution was granted by the Court of Common Pleas. This permitted settlement to be made and for a Sheriff's deed to be executed and recorded. In light of this, on February 27, 2006, Rebecca Coleman filed a motion for a temporary restraining order, which sought to set aside the Sheriff's sale. In her motion, Rebecca Coleman asserted that she was the true owner of the Property, not her husband. In light of this allegation, the Court of Common Pleas entered an order postponing the enforcement of the writ of possession in the Ejectment Action until March 28, 2006, when a hearing on the matter could be conducted. On March 28, 2006, the Court of Common Pleas held a hearing on Rebecca Coleman's motion for a temporary restraining order and to set aside Sheriff's sale on March 28, 2006. At the conclusion of the hearing, the Court of Common Pleas denied Rebecca Coleman's motion on the basis that she had failed to demonstrate good cause to set aside the Sheriff's sale. Following this ruling, the requisite writs were issued via the Ejectment Action, causing Plaintiffs to lose possession of and be ejected from their Property. After, the satisfaction

of judgment was filed, on August 10, 2007, the Ejectment action was completed and
discontinued.

Meanwhile, as the state court litigation was nearing a conclusion, Plaintiffs filed the
instant Complaint with this Court, on May 31, 2007, alleging constitutional due process
violations and conspiracy against Defendants.  Shortly thereafter, on June 7, 2007, Plaintiffs filed
a Temporary Restraining Order without notice pursuant to F.R.C.P. 65(b), which this Court
denied on June 11, 2007.  Then, on November 16, 2007, after the Court denied in part and
granted in part Defendants' Motion to Dismiss, filed on June 18, 2007, the Plaintiffs filed a *lis
pendens* against the Property.  The Property remains in the possession of Bank of America, as
successor in interest to Defendant Countrywide.


III.    **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable
jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under
governing law.  Id.

A party seeking summary judgment always bears the initial responsibility of informing
the district court of the basis of its motion and identifying those portions of the record that it
believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular

issue at trial, the movant's initial <u>Celotex</u> burden can be met simply by "pointing out to the

district court that there is an absence of evidence to support the non-moving party's case."  <u>Id.</u> at

325.  After the moving party has met its initial burden, "the adverse party's response, by

affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial."  FED. R. CIV. P. 56(e).  That is, summary judgment is appropriate if the

non-moving party fails to rebut by making a factual showing "sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial."  <u>Celotex</u>, 477 U.S. at 322.  "[I]f the opponent [of summary judgment] has exceeded the

'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the

court cannot credit the movant's version of events against opponent, even if the quality of the

movant's evidence far outweighs that of its opponent."  <u>Big Apple BMW, Inc. v. BMW of N.</u>

<u>Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).  Under Rule 56, the Court must view the

evidence presented in the motion in the light most favorable to the opposing party.  <u>Anderson</u>,

477 U.S. at 255.


IV.   **<u>DISCUSSION</u>**

        Defendants contend that they are entitled to summary judgment based on the grounds that

this Court lacks subject-matter jurisdiction over Plaintiffs' claims in accordance with the <u>Rooker-</u>

<u>Feldman</u> doctrine.  In the alternative, Defendants contend that Plaintiffs' claims are barred by the

principles of *res judicata* and for failure to properly state a claim.  The Court will address each of

Defendants contentions in turn.

    *A.*      Rooker-Feldman *Does Not Remove the Court's Jurisdiction Over This Matter*

As a general matter, the <u>Rooker-Feldman</u> doctrine deprives federal courts of subject-matter jurisdiction in some instances when a federal lawsuit follows a related lawsuit. The Supreme Court, however, has cautioned lower federal courts that the <u>Rooker-Feldman</u> doctrine is a "narrow doctrine." <u>Lance v. Dennis</u>, 546 U.S. 459, 464 (2006). Hence, the Third Circuit has declared that lower federal courts are not "divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." <u>Turner v. Crawford Square Apartments III, L.P.</u>, 449 F.3d 542, 547 (3d Cir. 2006).

In accordance with this narrow understanding of the <u>Rooker-Feldman</u> doctrine, the Supreme Court has opined that the doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries *caused* by state-court judgments rendered *before* the district court proceedings commenced and inviting review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 284 (2005) (emphasis added). Thus, the <u>Exxon Mobil</u> Court held that the <u>Rooker-Feldman</u> doctrine only applies in the "limited circumstances" in which a "losing party in state court filed suit in federal court a*fter the state proceedings ended*, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." <u>Id.</u> at 291; <u>see also</u> <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 (1ˢᵗ Cir. 2005) ("If federal litigation is initiated *before* state proceedings have ended, then–even if the federal plaintiff expects to lose in state court and hopes to win in federal court–the litigation is parallel, and the <u>Rooker-Feldman</u> doctrine does not deprive the court of

jurisdiction.") (emphasis in original); <u>Dorheim v. Sholes</u>, 430 F.3d 919, 923 (8th Cir. 2005) ("*Exxon Mobil* makes clear that the *Rooker/Feldman* doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings have ended.") (Citation omitted).  Therefore, it is evident that "neither <u>Rooker</u> nor <u>Feldman</u> supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court."  <u>Exxon Mobil</u>, 544 U.S. at 292.

In accordance with these well settled principles, the Court concludes that the <u>Rooker-Feldman</u> doctrine is inapplicable to bar Plaintiffs' claims in the instant matter.  It is evident that, at the time Plaintiffs filed their Complaint in this Court, the proceedings before the Philadelphia Court of Common Pleas had not yet come to a full conclusion.  Indeed, Defendants own brief in support of its Motion for Summary Judgment indicates that those proceedings did not conclude with finality until August 10, 2007, when Defendants filed a satisfaction of judgment in the Ejectment Action.  Plaintiff's filing of a Complaint in this Court on May 31, 2007, two-months prior to Defendants filing of a satisfaction of judgment and praecipe to discontinue the Ejectment Action, and a Temporary Restraining Order on June 7, 2007, indicates the presence of parallel, concurrent jurisdiction over the subject matter of the dispute, not appellate review of a state court judgment causing injury to Plaintiffs.  Thus, while it is clear that Plaintiffs were 'state court losers', their § 1983 suit against Defendants does not complain of an injury that was caused by the state court's denials of their motions and requested relief.  Therefore, the <u>Rooker-Feldman</u> doctrine is inapplicable to this matter.

  B.  *Plaintiffs' Claims are Barred by the Doctrine of* Res Judicata

The Defendants next contend that, in the alternative, Plaintiffs' claims are barred by *res judicata*. The relevant inquiry is whether Plaintiffs received adequate notice of the underlying foreclosure proceedings–and an opportunity to contest such proceedings–to comport with the requirements of Due Process. Defendants contend that the issue was adequately addressed by the Court of Common Pleas and, therefore, that Plaintiffs should not be permitted to relitigate the very same issues here in federal court.

Unlike the *Rooker-Feldman* doctrine, *res judicata* "is an affirmative defense and not a doctrine which would defeat the subject matter jurisdiction of this court." Ryocline Prods., Inc.v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) (internal citations omitted). In general, *res judicata* precludes parties and their privies to a litigation from relitigating matters that have already been resolved by a court of competent jurisdiction. See Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (citations omitted). Pursuant to well settled construction of the Full Faith and Credit Clause of the United States Constitution, when a judgment is rendered by a state tribunal, federal courts are statutorily bound to accord that judgment *res judicata* and collateral estoppel effect by virtue of 28 U.S.C. § 1738. See, e.g., San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005) ("This statute has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'").

Hence, this Court must give the same preclusive effect to the judgment of the Court of Common Pleas that the courts in Pennsylvania would give it. Turner, 449 F.3d at 548. Under Pennsylvania law, the doctrine of *res judicata* precludes one court from deciding a case that has

-8-

already been addressed by another court where the two cases share the following four elements: (1) the thing sued for, (2) the cause of action, (3) persons and parties to the action, and (4) the quality or capacity of the persons suing or sued.  See Duquesne Slag Prod. Co. v. Lench, 415 A.2d 53, 55 (Pa. 1980).

In applying Pennsylvania law to the instant case, the prior proceedings at issue are the Foreclosure and Ejectment Actions brought by Defendants in the Philadelphia Court of Common Pleas and referenced above.  During the Ejectment Action Rebecca Coleman filed a motion for a temporary restraining order, which sought to set aside the Sheriff's sale.  The basis of her motion was that she was the true owner of the Property, not Odell Coleman, and that she had been inadequately served and not named as a party, which was error because the Property had been deeded to her in 2003.  The Court of Common Pleas held a hearing on Rebecca Coleman's motion for a temporary restraining order and to set aside the Sheriff's sale.  At the conclusion of this hearing and Rebecca Coleman's presentation of evidence, the Court of Common Pleas denied the motion on the basis that she had failed to demonstrate good cause to set aside the Sheriff's sale.  Thus, it is evident that Plaintiffs directly raised the crux of their present Complaint before a state court tribunal and presented evidence to support their contention.  The state court heard the matter and ruled on the merits and, as such, claim preclusion applies.  See Wade v. City of Pittsburgh, 765 F.2d 405, 408 (3d Cir. 1985).

In addition to the threshold "on the merits" prong being satisfied, Defendants have also demonstrated that the other prongs of the *res judicata* test are satisfied.  "Although consistent in demanding satisfaction of these four criteria, the state courts have avoided mere technical adherence to mechanical principles."  Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).  Even

under Pennsylvania's less constrained approach to *res judicata*, it is clear that, with respect to the first factor, the Plaintiffs seek essentially the same relief in both the state court and federal actions.  In essence, Plaintiffs believe that the foreclosure and Sheriff's sale of their home, as well as Rebecca Coleman's subsequent eviction, were undertaken by Defendants without legal authority to do so.  Thus, in both cases, Plaintiffs employ various methods that all seek to void the above described actions by Defendants, or receive damages for the constitutional injuries Plaintiffs claim they have sustained by virtue of these actions.  Therefore, 'the thing sued for'–adequate notice and rights over the Property in dispute–is the same in both actions.

As regards the second factor, Plaintiffs now raise constitutional claims in this Court that there is no indication in the record they raised in state court.  The doctrine of *res judicata* prevents a party from pursuing claims, including constitutional claims, that he or she could have pursued, but did not purse in a previously adjudicated action.  <u>Gregory</u>, 843 F.2d at 116.  Thus, simply advancing a different legal theory in federal court is insufficient to give rise to a different cause of action for the purposes of defeating *res judicata*.  <u>See</u> <u>Turner</u>, 449 F.3d at 549.  Instead, the critical inquiry in determining whether causes of action are identical under a *res judicata* analysis is "the essential similarity of the underlying events giving rise to various legal claims." <u>Id.</u> (internal citations omitted).  When performing this analysis, a court should examine the acts giving rise to the complaint, the demand for recovery and the identity of witnesses, documents and facts alleged.  <u>See</u> <u>Marshall v. Park Plaza Ass'n</u>, No. 9802912, 1999 WL 689735, at *3 (E.D. Pa. Sept. 3, 1999).  Here, the Court concludes that the underlying events giving rise to Plaintiffs' Complaint are the same.  The central issue of whether Defendants and, correspondingly, the state court had the authority to order and execute the sale of Plaintiffs' Property, and Rebecca

Coleman's eviction therefrom lies at the heart of both Plaintiffs' state and federal actions.

Moreover, the Plaintiffs have not demonstrated any persuasive reason as to why their

constitutional arguments could not have been raised in state court.  Thus, the Court finds that the

second *res judicata* factor has been met.

      Application of the third factor of the *res judicata* analysis, however, is not as

straightforward.  Nonetheless, the Court concludes that the identities between the parties is

sufficient to support dismissing Plaintiffs' claims on the grounds of *res judicata.*  It is evident

that Plaintiff Odell Coleman was a party to both the Foreclosure and Ejectment Actions.  It is

equally clear that Defendants Bank of New York, America's Wholesale Lender, and

Countrywide were all parties to the underlying Foreclosure and Ejectment Actions–Bank of New

York as the named party, and America's Wholesale Lender and Countrywide as privies with their

trustee Bank of New York.  Furthermore, as referenced above, America's Wholesale is merely

another, licensed name for Countrywide.  Thus, for purposes of *res judicata,* they are one and the

same entity and, therefore, Plaintiffs' contentions that Countrywide constituted a new, real party

in interest is meritless.  Plaintiff Rebecca Coleman is the only possible outlier.  The Court,

however, concludes that she is undoubtedly in privity with Plaintiff Odell Coleman.  While

Rebecca Coleman was not an actual named party to the Foreclosure and Ejectment Actions, it is

clear that she received notice of those Actions as she sought to interject and use the state court to

enter an order temporarily restraining Defendants' actions in the interest of both herself and

Odell Coleman.  Hence, the Court finds that the third *res judicata* element is satisfied.

      Finally, as to the fourth factor, although Plaintiffs–specifically, Odell Coleman–was the

defendant in the Foreclosure and Ejectment Actions and is now the Plaintiff in the current federal

action, and vice versa for Defendants, there remains identity and quality of capacity.  See, e.g.,

O'Brien v. Valley Forge Specialized Educ. Servs., No. 03-3984, 2004 WL 2316425 (E.D. Pa.

Oct. 13, 2004).  In both the underlying Foreclosure and Ejectment Actions Plaintiffs and

Defendants each had adequate opportunities to present arguments and evidence on their claims.

The state court heard all of the evidence and decided the claims on the merits.  Therefore,

Plaintiffs' claim are now barred by *res judicata.*

       C.      *Plaintiffs Have Failed to State a Claim Upon Which Relief Can be Granted*

      Finally, even if this Court were to conclude that Plaintiffs' claims are not barred by *res*

*judicata*, the Plaintiffs have failed to state a claim upon which relief can be granted, and their

Complaint should be dismissed pursuant to Rule 56(c).  Procedural due process under the

Fourteenth Amendment requires "notice and an opportunity to be heard before the Government

deprives [one] of property."  United States v. James Daniel Good Real Property, 501 U.S. 43, 48

(1993).  Plaintiffs allege that Defendants' actions–in foreclosing on and ejecting Plaintiffs from

the Property without adequate notice–collectively constitute a violation of Plaintiffs' due process

rights.  The factual assertions Plaintiffs rely upon, however, are insufficient to support this

conclusion.

      Plaintiffs have asked the state court and now this Court to enjoin the Sheriff's sale, and

their ultimate goal in both actions is to invalidate the underlying mortgage foreclosure and

recover the Property.  Thus, it is clear that a deprivation of property occurred and has been

alleged.  That, however, does not end the Court's inquiry because a deprivation of property is

permissible where such deprivation comports with the requisite notice and opportunity to be

heard.  Defendants assert that Plaintiffs were properly deprived of their property, and that

Plaintiffs had sufficient notice and opportunity to be heard.  The Court agrees.

Indeed, it defies logic to believe that Plaintiffs did not have sufficient notice and opportunity to be heard.  Plaintiffs have presented no facts demonstrating that the underlying praecipe and writ of execution were invalid, aside from Rebecca Coleman's allegation that she was the true owner of the Property and had not been named as a party or adequately served.  Yet, even if Plaintiffs had raised some material question of fact as to whether the writ was somehow invalid, they have failed to show that they did not receive adequate notice and an opportunity to be heard in regards to the validity of the writ, the veracity of the manner and affidavit of service, and the propriety of proceeding to a Sheriff's sale.

Quite to the contrary, Rebecca Coleman filed two bankruptcy motions and a temporary restraining order in state court in order to enjoin the sale.  The Plaintiffs' motions for relief asserted the same defects that they now present before this Court.  On March 28, 2006, before any Sheriff's sale was conducted, a hearing was held by the state court on Rebecca Coleman's motion for a temporary restraining order.  Rebecca Coleman was present at this hearing and was represented by an attorney.  At this hearing she had the opportunity to have her objections and arguments heard, and to present testimony and evidence on her behalf.  The Court heard all of this evidence and denied Rebecca Coleman's motion, allowing the Sheriff's sale to proceed.  Thus, it is evident that there was adequate notice of the sale and an opportunity to be heard.

Though not explicitly stated, Plaintiffs' due process claims are evidently procedural, not substantive.  The challenged defect is not that Odell Coleman was not in default, which he clearly was.  Nor do Plaintiffs challenge the substance of what Defendant creditors say is owed.  Rather, Plaintiffs allege procedural defects in the process of service and notice.  In light of the

notice received by Plaintiffs and their opportunity to be heard, however, these alleged procedural defects do not create a genuine issue of material fact as to whether Plaintiffs' due process rights were violated.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that, while it has subject matter jurisdiction over this matter, *res judicata* bars Plaintiffs' claims. Moreover, even if the Court were to find that *res judicata* did not bar Plaintiffs' claims, Plaintiffs have failed to state a claim upon which relief can be granted. For these reasons, Defendants' Motion for Summary Judgment will be granted. An appropriate order follows.